Good morning, ladies and gentlemen. Our first case for this morning is the United States v. Aaron Schock. Mr. Hatch. Good morning, Your Honors, and may it please the Court, Ben Hatch on behalf of Aaron Schock. The government would have this Court be the first in the nation to hold that a member of Congress can be sent to prison based on ambiguous or debatable interpretations of House rules. So before we get there, Mr. Hatch, I would like maybe just a word or two about our appellate jurisdiction for the rules part of this case, because certainly the well-established standard for appellate review, I think, easily covers the speech or debate clause. That's a sort of immunity. But otherwise, for the collateral order doctrine, one of the criteria is that something has to resolve important questions separate from the merits. And I'm having a really hard time separating the merits from your rulemaking clause arguments. They seem to be imbued in the rulemaking clause. Yes, Your Honor. Thank you. And again, I do think there's no dispute that the speech or debate is before this Court. And so therefore, there's two grounds on which the rulemaking issue can be appealable. One, either directly by virtue of the collateral order doctrine, or secondarily, through the pendant appellate jurisdiction doctrine, both, I think, apply and cover. Which, of course, the latter, the Supreme Court has been very discouraging about in recent years. Pendant appellate jurisdiction, I mean. So how do you comply with the, that it's conclusive? Okay, maybe it's conclusive. I don't know. It's not. The judge said hundreds of times that he was going to revisit these things as the trial proceeded. So there's some issue about conclusiveness separate from the merits. Tough. Functionally unreviewable. Well, that depends on what the scope of the privilege you're asserting, and it must be a privilege, I assume, is. And I think that's the key, Your Honor, is that it is a privilege, and it's a privilege by virtue of the separation of powers from prosecution itself. Why is the rulemaking, certainly, again, I'm with you on speech and debate about that, but why is the rulemaking clause that kind of privilege? Yes, Your Honor, and the Supreme Court, I don't believe, has considered the rulemaking aspect directly, but every lower court that has considered the issue has found that it is appealable under the collateral order doctrine, and that would be the Ross-Senkowski decision of the D.C. Circuit. There's not this exact issue, but the Myers decision from the Second Circuit, which we cite in our reply brief, I think talks very clearly about why separation of power is immunity. It's immunity from suit that arises by virtue of the constitutional authority. Could you talk about this, perhaps, in the Supreme Court's terms? Cases like Midland Asphalt and McDonald discuss when an order in a criminal case is appealable. How would this fit within the scope of Midland Asphalt or McDonald? Yes, Your Honor. So to go back to the point, is it separate from the merits? Yes, it is separate from the merits because- I'm not asking about the collateral order doctrine in general. I'm asking about two specific Supreme Court cases, and I wish you'd discuss them. Yes, Your Honor. So this is a case where the issues that we are raising, again, they're, and I won't get devolved into the collateral order doctrine, but they're adjudicable separate from the merits, and like double jeopardy, they're an issue that can only be addressed, and it can only be vindicated pre-trial, and therefore, that's why I think the interlocutory appellate right is so critical because if we wait to trial the immunity- I would really love to have you address the meaning of those two cases in particular. Yes, Your Honor. And what those two cases are saying, yes, the courts, the appellate courts need to be, I believe, guarded about recognizing additional interlocutory appellate rights, but this is a doctrine, and I don't think any of the cases that have recognized this doctrine have suggested a revision in light of Supreme Court cases. This is a doctrine that arises from the separation of powers, and it's separate from the merits of the case. But let me just say, I mean, looking at Midland Asphalt, this interlocutory appeal hinges on whether it's a right not to be tried, but even under the D.C. Circuit's Rostenkowski case, if you go through the latter half of that opinion, they're looking at each rule. They're trying to see is this ambiguous or is this clear enough to put it in the positive way that we can go forward. It finds about half of them are clear enough to go forward. It finds some of them are not clear enough to go forward. So that's pretty hard for me to characterize as a right not to be tried in the same sense that double jeopardy. If you can show that you've already once been put in jeopardy for something, then that's it. You're finished. Well, and, Your Honor, that's exactly right. Rostenkowski went through the indictment. It found certain allegations were non-justiciable. That's what I just said, and it found many others to be justiciable. And so it's a right not to be tried with respect to non-justiciable allegations that are non-justiciable by virtue of being The reason that they're non-justiciable under the Rostenkowski reasoning is because it would be the courts fashioning a rule of Congress, and, of course, Congress in effect through interpretation, and Congress has the specifically delegated constitutional authority to do that. I think that's a very broad way of putting that, but I want to make sure you've answered Judge Easterbrook's question before we move on into these other matters. Yes, Your Honor, and, again, I think either under the collateral order doctrine, it is separate from the merits because under the reasoning. Now, just to repeat, I was inviting you to discuss two particular Supreme Court cases. I don't want a general discussion of the collateral order doctrine. I think I know the Supreme Court's views about that, but if you have anything to say about those two cases, I would appreciate hearing it. Well, yes, Your Honor, and all I'll try to answer the court with is that one of the issues we have raised up with the district court's decision is that I think it was in a Yes, the district court did leave it open to come back to these issues later in the case, depending on the proof, but It was quite clear about that. It said if you start straying into whatever the degree of ambiguity is, and I think there's a lot to be said about that, but the court said if you start straying too far into this zone, then I'm going to cut you off. Then there will be a merits-related limitation. And I think two relevant points to that, Your Honor. One is that, of course, if you have to go that far before deciding, then you have already gone to trial, and the immunity that arises from separation of powers has been, in effect, lost, even if it could be All the time, by the way, I'll remind you, in immunity cases, whenever there are disputed issues of fact in a qualified immunity appeal under Barron's against Peltier, the person doesn't have the right not to be tried, although they certainly may not be found liable if, in fact, they're acting within the scope of their immunity. And that brings me to the second point, which is that I don't believe we have a disputed issue of fact, Your Honor, to the point Your Honor makes. What we have is a question about whether these house rules are going to be utilized in this case. But, you know, I'm going to just jump ahead, then, and say your view is that we need to, if I'm not mistaken, is that we need to, in a sense, assume that the meaning of all of the house rules is exactly what Mr. Schock says it is, and then ask ourselves how much of this indictment survives. Because surely he can't get anything better than his own reading of the rules. And I'm not sure that using the rules as a basis of liability is the same thing as using the rules as a piece of evidence in a proceeding. And I'm also not sure why you didn't talk, since we're all about ambiguity here, at all about the Supreme Court's decision in Heckler v. Cheney, which does address the situation where a rule is so ambiguous that there's functionally full discretion in the officer, in that case an executive officer. So if that's what we're talking about with ambiguity, this case looks quite different. Well, Your Honor, a couple answers to that. One, I think there's no doubt that these rules are front and center in this case, because not as a matter of evidence. For the tax counts and the FEC counts? Well, yes, for all of the counts. Why? Because the way the indictment is structured is it has these beginning 74 counts that are then incorporated specifically by reference into every ensuing count. They are not incorporated into the tax counts by reference, but I believe there's no dispute that those tax counts are nevertheless going to depend on these preceding allegations. So is it your view that Congress, the House, or the Senate, the House, let's say, can pass a rule saying we can give a million dollars to each representative, but that representative does not need to report that million dollars on his tax return? Does the power extend that far? If that was by virtue of a House rule and not a law, Your Honor? Right, only a House rule, yes. I think that the – well, you've got to look to what the law requires. Well, the law requires it, all income from whatever source derived or something like that. That's Section 61, everything. So if the law has a clear standard that can be adjudicated without reference to the House rule – But you can't look at the million dollars without reference to the House rule. That's where it came from. Right. The House rules may nevertheless be relevant in a case if they are necessary for adjudication of the case. This case I think is – So let's stay with that for just one minute. So you've just agreed that the House rule that I've postulated just as a hypothetical would be relevant to the case, and I think you just said that the person would not be entitled to decline to report that million dollars to the IRS because there's a statute that says you have to report all income. Maybe you've got deductions. Maybe you have other things. That's later on, but you've got to report it. So I don't see why this case isn't the same. There are tax counts. The House rules are relevant to the existence of the tax counts, but the House rules at the end of the day do not determine whether or not anybody, including Mr. Schock, violated the Internal Revenue Code. Well, I think, Your Honor, that it may depend in this respect because under the tax code, of course, you need to report income. You don't necessarily report reimbursement for expenses and things like that. And so because of the front end of this indictment, I think so much is focused on things that were submitted for reimbursement from the members. But there are other things, for example, that I'll just call, let's say, use of funds. I want to use a neutral term. Use of funds from the various campaign funds, and it is not uncommon to see cases where people are charged that that's part of their income. It's an issue. I mean, we don't know the answer to these things, but it's an issue, and I don't see why the government, just because there's a House rule floating around in the background somewhere, can't pursue that. It is. Those are the only counts that are not incorporated, everything else. My understanding is the government will probably rely on similar theories. So are you agreeing that the tax counts don't have to be dismissed at this stage? No, Your Honor, I'm not agreeing to that. It sounded like you got pretty close to that. No, what I'm saying is that I believe, if you look at the indictment, that they're using the same material that is protected, immunized conduct in the mileage counts. I mean, they identify all this alleged activity, and then that flows throughout the entire indictment, and though not specifically incorporated into the tax counts, they've not disputed, I believe, that they intend to use the exact same rules. In fact, they've said in their brief. The court said, let's wait and see. For all you know, in the tax counts, having read the district court's opinion, the government may not put all of that evidence on the table. There's nothing wrong with an indictment putting more in than the government's going to use. And I think, well, a couple of points about that. One, the government has said repeatedly, and including to this court, that the House rules are necessary to its case, and not necessary as to anything specific, but necessary into overarching things like proof of knowledge, intent to defraud, and then materiality, which is specific to some counts. To some counts. To some counts. But proof of knowledge and intent to defraud are going to be, I think, common among these many counts. And because this indictment relies, and I think it's notable they tried to defend it on appeal by saying, well, maybe things like the amount of documentation that supported the mileage, which is in paragraph 22 of the indictment, is a core allegation that there was insufficient documentation, even though the House accepted all these vouchers. Well, but, so let's take the mileage for a minute. I see two possibilities, and I don't have enough facts in front of me right now to know which we're really going to talk about. One possibility is that he's put in for mileage, and if you did a Google map calculation of the miles from A to B over the course of a year, maybe you'd wind up with, you know, 10% less in the way of miles than he had. But that's probably non-material because maybe he took a detour to go to a restaurant or something. The other possibility is that the odometers on all of the cars that he says he used are 150,000 miles short of what he put in, and it's just not there. And I don't know that that has anything to do with Google Maps or how he drove. So I think there are facts down the line which might yield a finding of innocence, which might yield a finding of a conviction, but we don't know. Well, that's right, and I'm certainly not asking this court to resolve factual matters pre-trial, and I will just say, though, as to the odometer. But there's a theory that would be very troublesome, you know, if you put in for 150,000 miles more than you even physically drove on the vehicles. That is once stated in this indictment. There are many other allegations that are immunized conduct, and our position is you can't put all that together, sew it through the entire indictment, and then pass muster now by saying, well, that could be surplusage. Maybe it'll, you know, come in, but at the same time saying it's necessary. Can you tell me, answer just this one last question for me. What do you think it means to interpret a rule? Do you think it means to read it, which obviously involves a little interpretation? Do you think it means something else? And why is it that courts can interpret executive branch rules but not legislative branch rules? Yes, Your Honor, thank you for that question. We, and this is, I think, will maybe help the court. You know, we take no issue with the prospect that House rules can be cognizable in judicial proceedings, and there's Supreme Court law to that effect. I understood your briefcase, not to say that, but anyway, that's fine. Yeah, well, I'll try to clarify. Our position is that an ambiguous rule cannot be used to support a prosecution of a member of Congress. But none of the rules are, of course. They're being used as evidence in wire fraud and mail fraud and election, you know, violations and the like. Well, yes, but that's what the decisions say. If they're being used as evidence and the interpretation, it's a debatable or an ambiguous interpretation of the rule, and on the one side is the government's theory of prosecution,  then it's non-justiciable and the count must be dismissed. That's not a question of evidence for a jury. It's a question for the court, and I think it's shocking that the government says, well, we can just hand, I assume they plan to hand these rules to the jury, and maybe you get 12 different interpretations back there. And who knows whether the law was followed or not. And I see I'm into my rebuttal time, if I could reserve my time. Of course. Thank you. Thank you. Mr. Glaser. May it please the Court. William Glaser for the United States. If I may start with the issue of this Court's jurisdiction over the Rulemaking Clause claims. The Supreme Court has been very clear that there is a very limited number of issues in a criminal case that can be appealed pretrial. One of those we don't dispute is the Speech or Debate Clause. Double jeopardy is sort of the classic example. But as the Supreme Court said in the Midland Asphalt case, there's a crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges. And in this case, looking at Rostenkowski, which is the broadest interpretation that any court has taken of the protection that's afforded to House rules, even Rostenkowski's merits reasoning doesn't support its jurisdictional holding because Rostenkowski simply said you need to strike those allegations in the indictment that referenced ambiguous House rules. Simply striking allegations in the indictment is very different than saying that the member of Congress is actually immune from prosecution and has a right not to be tried. Moreover, it's more than just a right not to be tried. So just to interject for a second. Obviously, Mr. Schock would like a lot more things struck from this indictment than the government is prepared to strike. OK, we can assume that. Indeed, it would like the whole indictment struck. But even if it pared it down, what you're essentially saying is that the only remedy for a refusal to strike certain charges from the indictment is to take an appeal at the back end. That's correct, Your Honor. And that is similar to other important rights, such as the Speedy Trial Clause. That was the McDonald case the judge Easterbrook referenced. Vindictive prosecution, the court in Hollywood Motor Car said vindictive prosecution. It also suggested the unconstitutionality of a statute. These are all very important rights. In Midland Asphalt, it was a breach of grand jury secrecy. These are important rights that, yes, it would be nice, for example, if the statute is unconstitutional, if the defendant didn't have to go to trial. But the court has said that that's something that he can seek review of after conviction, and he's not entitled to pre-trial review of that. And moreover, it's not just a right not to be charged or not to be brought into court, but the Supreme Court has also said in Will v. Halleck, which is cited in the defense brief, that it must be not the mere avoidance of trial, but avoidance of a trial that would imperil a substantial public interest. And here, although certainly separation of powers concerns are important, we're not disputing that, but there is no constitutional right, and this gets kind of to the merits holding of Rostenkowski, there's no constitutional right to avoid trial where rules of the House of Representatives or the Senate are merely introduced as evidence. And that's why, even if it could be construed as a right not to be tried, it's not a right to be tried that implicates some important right or some constitutional immunity. So if I may then turn to... Am I missing something here? Why would the rules ever be introduced as evidence? You don't introduce the Internal Revenue Code as evidence in a criminal case. The judge presumably will tell the jury what the rules are, but the rules are not themselves evidence. Am I missing something? Your Honor, I don't know that you're missing something, but the distinction is that in the case of the Internal Revenue Code, for example, the code itself provides the standard of criminal liability. In this case, the standard of criminal liability is provided by the wire and mail fraud statutes, the false statement statutes, etc. The rules themselves... So what? If somebody... We don't need to get into this, but if somebody makes a misrepresentation under a federal regulation and is prosecuted for wire fraud, one doesn't introduce the regulation as evidence. The judge will tell the jurors what the regulation required. Your Honor, that is correct if it's a matter of where the criminal liability is premised on the regulation. However, we analogize this in our brief to the Medicare fraud cases, and there are other examples too. Banking regulations, sometimes in a fraud case you can simply introduce the policy and practice of a particular organization to show that there were policies in place that required certain things to be done that weren't. We also cited Veterans Administration Regulations, the Levinson case, on page 42 of our brief. Can I just maybe take this to a specific level because I am curious about this? Some of the rules in question, or at least some of the activity, I'll drill down and just say some of the things that Mr. Schock allegedly did, such as furnishing his D.C. office for a large amount of money. He points in his brief to some rules that make it seem that these were permissible expenditures and other rules that seem to point in the other direction, or so he argues. So is it your idea that the district court judge would simply tell the jury, well, there's this rule about buying furniture for the D.C. office that says rugs are okay and this other rule that says rugs are not okay. It's up to you, jury, to decide whether buying an expensive Oriental rug for his office was out of bounds? Help me out on this. Your Honor, I don't think that it would be exactly that. What I think the district court would do would instruct the jury, and this is, again, common in Medicare fraud cases, would instruct the jury that the rules are not themselves, a violation of the rules themselves is not a violation of the law. That would be an important instruction, but would then further say that they were introduced merely to prove his intent and the materiality of his false statements. And what would happen in this case? He's raised rules that I think he would like to introduce in his own defense, especially with respect to the photography counts. Oh, the chandelier, too, I think. He's making a big argument about what's of nominal value and what isn't, and maybe $5,000 is just nominal for some people. Yes, Your Honor.  The question before it is not necessarily is not whether or not he actually violated the house regulations that are in the handbook, but rather whether or not he engaged in the scheme of fraud, et cetera. But the regulations are simply there as evidence to show materiality and his intent, the fact that he was on notice that, in fact, he had an obligation to report his mileage accurately, et cetera. Well, I mean, the mileage struck me as a little different from the furniture because the mileage reminded me of the part of the Rostenkowski case where the D.C. Circuit says, you know, submitting vouchers for the post office and getting money in return is just so far out of bounds that nobody could think that was a permissible thing to do. And if, as I understand the government to be alleging, you've submitted requests for reimbursement for 150,000 more miles than you drove, I don't know why we should construe the house rules to say that that's permissible. Right, Your Honor. So there may be some things that are easier to see as distinct from the house rules than others. Correct. I think that is true, Your Honor. It is important, though, even with respect to the mileage counts, the government believes that the rules are extremely helpful to prove the materiality and its intent. For example, just the fact, and the D.C. Circuit recognizes in the Durenberger case, just the fact that there is an obligation to report mileage correctly and it must be actual miles traveled, that is only found in the handbook. So if we were to try and approach a trial without any reference to the handbook, essentially we'd be- Yes, Your Honor. The judge could do that. You wouldn't imagine putting the handbook in evidence, or would you? Your Honor, we did imagine putting it in evidence. That, again, happens frequently in Medicare cases. But even if we didn't, the district court obviously would have discretion whether or not to actually allow the introduction. But the district court could simply instruct the jury, or the parties could perhaps stipulate to what the requirements of the rules are. But I think this is important as well. The defense posits that we want to go around prosecuting people using ambiguous rules. We're not, again, to answer Judge Easterbrook's earlier question, we're not seeking to premise criminal liability on the rules. But additionally, we don't think that the most vague or ambiguous rule out there would actually be useful or should be introduced in a trial. So they give the example of a rule that said do nothing improper. I think a district court would be well within its discretion and perhaps would have to exclude such a rule as unhelpful to the jury. It would be excludable either as irrelevant or under 403. We may, if this case ever comes back, have to decide which of these things is an evidentiary issue. But now it sounds like you're confusing the rules of evidence with the rule of lenity, that when there's genuine ambiguity, it should not be treated as a crime. That's a different question from what goes into evidence. Your Honor, I hope I'm not confusing the two. The rule of lenity applies to the statute of conviction, or it has been applied to regulations as well. But because we're using them as evidence, the rule of lenity doesn't apply. Well, we may have to discuss that later, too. All right, I'd be happy to discuss it. A prosecutor can take that position, but you shouldn't expect the warmest of welcomes. I understood, Your Honor, but as it relates to the evidentiary issue, the district court has discretion to determine whether or not a rule is actually relevant and helpful to the jury in making a determination with respect to intent and materiality. And, for example, in the Jefferson case in the Eastern District of Virginia, there the district court excluded the congressional oath and certain rules on the basis that they weren't relevant and weren't helpful to the jury, but admitted others on the basis that they were. But, again, we're only seeking to use the rules here as evidence, not to premise liability upon them. And, Rostenkowski, we – So what other – I mean, surely if you're using them as evidence, sometimes we see a situation where maybe you refer to the rules, but it's really the conduct underlying whatever made you think about the rule, whether it's the driving or whether it's turning to the campaign fund to buy certain vehicles or whatever the underlying conduct is surely is the main point of the case. Absolutely, Your Honor. I completely agree with that. And I think that was the distinction that the D.C. Circuit appropriately drew in the Durenberger case. In Durenberger, it said that the question really isn't whether or not he would be entitled to reimbursement for every single dollar that he submitted. The question is one of materiality. And in Durenberger, which preceded Rostenkowski by a few months, in Durenberger, the court said that the rules are enough to show that he had an obligation to report these things honestly. He had to be honest. And in this case, that's what we're seeking to use the rules for, to show that he had an obligation to report these things honestly. We're not, again, seeking to – we would prefer to have this case be about his underlying conduct and not primarily about any particular ambiguities in the rules. I think that's a sound approach, yeah. And I think that the problem with the Rostenkowski framework – it should decide that it doesn't have jurisdiction. This court can also decide that the relevant rules aren't ambiguous. But the problem with Rostenkowski and the reason we're challenging it, one of the problems is that Rostenkowski requires this court pre-trial, before there has been any evidence presented, to sort through the potentially relevant rules, those that are referenced in the indictment. The defendant brings up rules that aren't referenced in the indictment to determine whether or not the allegations, the bare allegations in the indictment, would clearly fall within the regulations. So here's something that I've been trying to think about. Certainly there are some, as I mentioned when I mentioned Heckler, there are some rules from whatever branch of government that are just very vague. They don't really tell you anything. And I think certainly one of his rights is not to have such a rule used to show that he violated either the mail fraud or the wire fraud statute or any of the other statutes that you've brought up. Because any behavior under a rule that is that ambiguous might be fine. So where's the notice? Where's anything? There are other rules that seem to be more solid, like don't lie when you submit your mileage. Surely that must be a rule of the House. Yes, it is. I can't fathom the alternative. So that, it seems to me, the government would have to show that he knowingly submitted the wrong number and that it's wrong enough, it's not my little detour to go to a restaurant, discrepancy between various rulings, various trips, but wrong enough that there's no doubt that it's a misstatement, right? Yes. Okay. So I guess what I'm saying is there are regulations and regulations, and some of them here maybe, some of them here struck me as pretty vague, actually. Yes, Your Honor. Furniture. And again, we wouldn't dispute that I think as an evidentiary matter and potentially even as a due process matter, a rule that was sufficiently ambiguous shouldn't be introduced as evidence. But here we're talking about— Or maybe you want to say shouldn't be relied upon. Right, shouldn't be relied upon. Just to save you from Judge Easterbrook. There we go. But I think the important thing is that this is not, as a constitutional matter, there's not a constitutional prohibition on this court looking at a rule of Congress and trying to determine its meaning where that rule is not clear beyond a reasonable doubt. And the problem with Rostenkowski is it says that this court can't even begin the process of interpretation. It's essentially what it has said. It actually says two things. I mean, when it states the rule to begin with, it is much more cautious. Is it so ambiguous that you can't do something? And so you actually just have to infer the greater level of specificity from the way it applies the rule. Yes, Your Honor. That it's stated. That is correct. That is correct. I think Rostenkowski is a confusing opinion in many respects because it's unclear exactly what the standard is. We think that these rules here are unambiguous under either standard, but certainly the beyond a reasonable doubt standard that the court applies later in its opinion is far too high of a threshold. That's essentially saying that this court can never resolve any sort of low-level ambiguity the way that it would in a statute or in another regulation. Right. So what I'm particularly looking at is where they say, we note first that we agree with the intuition behind Rostenkowski's argument. A sufficiently ambiguous House rule is non-justiciable, whatever that means. Right. And I'm not sure what that means, and I'm not sure that even the way because they applied it in a certain way to the way congressmen, former congressmen by that time, Rostenkowski, was proceeding, that it puts a binder on what we can do here. Right, Your Honor. And, again, to go back to the sort of broader constitutional question, the defense points out that the Smith case that we rely on heavily in our brief didn't actually address an ambiguous rule, and perhaps it wasn't, to be fair. The court said that it found the rule clear, found the meaning clear, but it was directly contrary to the Senate's interpretation, and I think part of the underlying premise of Rostenkowski that is wrong is the view that courts cannot take positions on the meaning of a House rule that might conflict with that of the enacting chamber. And I point the court to pages 1306 and 1307 of Rostenkowski where the court said where a court cannot be confident that its interpretation is correct, there is too great a chance that it will interpret the rule differently than would the Congress itself. In that circumstance, the court would be effectively making the rules. And I think Smith just completely undermines that premise of Rostenkowski and says the court in Smith was willing to interpret a rule directly contrary to the views of the Senate. Here the House hasn't even weighed in on the meaning of these rules. There hasn't been any sort of authoritative interpretation by the House. And in the ordinary case, I think the government would try to align its understanding of the House regulations with the House's. Otherwise, you'd certainly have problems with the evidentiary value of the regulations if the House interpreted them in a different way. Do you think the House rules should be treated differently from, say, EPA rules? When the EPA interprets its rules, generally the judiciary will say, well, unless they've flipped their wig, that's a binding interpretation. Probably not in that exact language. Should the House rules be treated differently? Your Honor, that is a difficult question that the government hasn't weighed in on in a prior case. That's why I asked. I think deference would likely be appropriate under the Auer case from the Supreme Court, the way that the court has applied this in the past. I think deference is likely appropriate. And beyond that, I really can't say. There's not any case law in it either way. So that yields the next question. What sources do you look to for understanding what the House thinks its rule means? Mr. Schock argues that you should just look at what it did. It approved all these various vouchers. Ergo, these were all legitimate expenditures, end of case. Your Honor, we don't think that's appropriate. First of all, the House approval, when it wasn't presented with all the facts and, in fact, there were false statements included in the vouchers, the House approval really means nothing in that instance. But we would contemplate in the ordinary case, if the House was willing to do so, as they were before the grand jury here, we would call witnesses from the House of Representatives. And, in fact, we had House witnesses that testified in the grand jury. Now, obviously, and this sort of segues to the speech or debate, which I'd like to get to if I could, the House can, in certain circumstances, assert that it has a privilege under the speech or debate not to appear and answer questions about its internal processes of approving these vouchers, et cetera. And our position thus far has been to respect the assertion of that privilege. However, what Mr. Schock would have this Court do on the speech or debate issue is to go far beyond what the House of Representatives has said, for example, is amicus, which is that the House side of the vouchering process is protected and have this Court say that, in fact, his submission of a voucher, happens to be a false voucher, is also protected by the speech or debate clause. And that is something that no court has ever done. And, in fact, many courts have concluded that false statements, for example, in financial disclosure forms, we cite the Menendez case, the Myers case out of the Second Circuit, the false travel vouchers, that's the Clay case in the D.C. District Court, and even Dernberger involved false vouchers regarding, in that case, the member's use of house funds to pay for rent at a house that he actually owned himself. That might even cover Rostenkowski's submission of the postage vouchers. I think that's correct, Your Honor, yes. Rostenkowski is similarly recognized that the speech or debate clause did not protect Rostenkowski's conduct in that case. So his speech or debate argument, which is the best argument for him because it actually does entitle him to immunity that is reviewable pretrial, it would ask this court to go far beyond what any court has ever recognized before and hold that the mere submission of a voucher or communications by a member in an attempt to evade the House vouchering requirements is protected by the speech or debate clause. And that's inconsistent with the Supreme Court's decisions in Gravel and Brewster, which have said that it must be something that's core to the functions of the Congress, and this is certainly not, for those reasons that we ask the court to affirm. Thank you. Thank you. Mr. Hatch. The government has asserted today the power to try a member on its own standards and interpretation of rules. A member of a co-equal branch, and the only remedy according to it, and it's very unclear to me still when it's a trial,  do they just get handed the book of rules under the government's view? I'm not sure. But however it is, these rules are to be interpreted to the jury, and then the member's only recourse is an appeal after the fact. And, of course, these are members who are performing the functions of a coordinate branch of government. Well, that didn't stop the Supreme Court in Clinton against Jones, I'm going to comment. I mean, coordinate branches of government have to abide by the law, right? From being subject to a deposition, Your Honor, I think it's different. It was a deposition, but I thought you agreed earlier that the House couldn't just exempt members of Congress from the general criminal laws either. Certainly not. There's the Brewster case. We take no truck with that. But what is the difference is when they're reaching in and creating standards that the House may never have set for itself and using those to prosecute a member. But what reason is there to think that the House said we actually only require partial honesty. We don't require honesty all the time or in all situations when we're dispersing funds. Your Honor, I'm not going to argue about the honesty. What I am going to argue about is everything else they build up and around that that is contained within this indictment. For example, Mr. Glazer just said that the House requires actual miles to be reported, and that is stated in the indictment as an interpretation of House standards. That's paragraph 22, but you won't see that quoted. The House does not do that by rule. It allows for mileage reimbursement, but it doesn't say whether it's the actual, I'll say literal. How is any of this different from, say, the rules of the executive branch? The Department of Justice has rules for reimbursable mileage, and I assume has prosecuted violations of that. The judicial branch has such rules. It was about a year ago that the judicial branch referred one of its own judges to the Department of Justice for criminal prosecution for making false mileage claims. There doesn't seem to be anything peculiar to Congress here. No, and we take no truck with those, Your Honor. The reason is that if you're premising your prosecution on a federal criminal law and if you want to use a clear rule of a coordinate branch, whether it be the executive or the House, then that's a prosecution that can proceed. The problem with this prosecution and the constitutional authority flows from the House's ability to make the rules for its proceedings. But that's why I asked whether there was anything different. The rules for the judicial branch are made by the judicial conference. The rules for the Department of Justice are made by the attorney general. There is always discretion in the making of the rules. One might as well say Congress can write any tax statute it wants, and therefore no tax statute can be enforced by the judicial branch because that impinges on Congress's ability to write down what it wants. But you wouldn't say that, I assume. No, Your Honor, I certainly wouldn't, and if I may, I'm over my time. Go ahead, please. Thank you, Your Honor. No, we certainly would not say that. A clear rule that's applied through a criminal statute can be applied. The problem with this indictment is whether it be the executive or the House, although clearly there's a House authority, they have the authority to make the rules for their own proceedings, and another branch cannot, in the guise of interpretation, create a rule that that branch did not set for itself. And that's what this indictment does in its scope and why we ask that this court reverse and direct the dismissal of the indictment. All right. Thank you. Thank you very much. Thanks to both counsel. We will take the case under advisement.